WR-73,484-02
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/22/2015 3:02:56 PM
Accepted 5/26/2015 9:50:26 AM
ABEL ACOSTA
CLERK

May 22, 2015

Abel Acosta, Clerk of the Court
Court of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin, Texas  78711

### RE: *Ex parte Neal Hampton Robbins*, No. WR-73484-02

Dear Abel:

Please file the attached transcript of oral argument as an appendix to this pre-submission list of authority in the above-styled and numbered cause which will be argued on June 3, 2015.

**Ex parte Keller**, WR-36,232-02 & WR-36,864-02 (May 20 2015)(not designated for publication)(granting habeas relief where State's expert had reevaluated his trial testimony that complainant had suffered sexual abuse, and admitted at writ hearing that this testimony was misleading and where he now believes that no such signs of sexual trauma existed).

**In re Allen**, 2015 WL 2265128 at *6, *8 (May 13, 2015)(Yeary, J., concurring)(urging legislature to "provide clear definition of mental retardation" so that courts, in assessing viability of **Atkins** claims, can separate "the sheep from the goats.")(citation omitted).

**Jaster v. Comet II Const., Inc.**, 438 S.W.3d 556, 581 (Tex. 2014)(Hecht, C.J., dissenting)("The legislative process does not usually allow for the same care [as in the drafting of judicial opinions] to be taken in the choice of language.  There are many authors, the text is subject to amendments of all sorts, friendly and unfriendly, and in the end, the product is often one of compromise, which is essential to the legislative process.").

**United States v. Rosenberg**, 346 U.S. 273, 310 (1953)(Frankfurter, J., *dissenting*)("American criminal procedure has its defects, though its essentials have behind them the vindication of long history. But all systems of law, however, wise, are administered through men and therefore may occasionally disclose the frailties of men. Perfection may not be demanded of law, bu the capacity to counteract inevitable, though rare, frailties is the mark of a civilized legal mechanism.").

**Lee v. Tennis**, 2014 WL 4187590, Civ. Action No. 4:08-CV-1972 at 1-2; 44 (M.D. Pa. June 13, 2014)("'Slow and painful has been man's progress from magic to law.' This proverb, inscribed at the University of Pennsylvania Law School on the statue of Hseih-Chai, a mythological Chinese beast who was endowed with the faculty of discerning the guilty, is a fitting metaphor for both the progress of the law and the history of this case. The law is the means by which fragile, frail, imperfect persons and institutions seek greater perfection and justice through the search for the truth. But the search for the truth is not always easy, and the path to the truth is not always clear. Sometimes we find that truth eludes us. Sometimes, with the benefit of insight gained over time, we learn that what was once regarded as truth is myth, and what was once accepted as science is superstition. So it is in this case. ... To achieve justice, the law must serve as the vehicle through which imperfect institutions strive for greater justice through a more perfect understanding of the truth. Therefore, as our understanding of scientific truth grows and changes, the law must follow the truth in order to secure justice."[1]).

**McGrath v. Kristensen**, 340 U.S. 162, 178 (1950)(Jackson, J., *concurring*) (explaining why he changed his mind after having written an opinion in opposition to his current position, "The matter does not appear to me now as it appears to have appeared to be then.").

---

[1] In **Lee**, the magistrate judge recommended a new trial for the habeas petitioner, who was convicted of the arson murder of his mentally ill daughter 25 years ago, because the "arson science" upon which his conviction was largely based was no longer scientifically valid. The magistrate judge's report and recommendation was later adopted by the district judge and Lee was released from prison on August 22, 2014.

Pursuant to TEX.R.APP. 9.5(d), copies of these documents have been served upon opposing counsel via e-filing.

Sincerely yours,

*/s/ Brian W. Wice*

*BRIAN W. WICE*

BWW:dje

cc: Bill Delmore
    Lisa McMinn

WR-73,484-02

IN THE

COURT OF CRIMINAL APPEALS

-----------------------------------------------------------------

EX PARTE NEAL HAMPTON ROBBINS, APPLICANT

-----------------------------------------------------------------

*Successive Application for a Writ of Habeas Corpus
in Cause No. 98-06-0075-CR from the
410th Judicial District Court of Montgomery County*

-----------------------------------------------------------------

TRANSCRIPT OF ORAL ARGUMENT

-----------------------------------------------------------------

APPEARANCES:

FOR THE APPLICANT:           BRIAN W. WICE
                             The Lyric Centre
                             440 Louisiana, Suite 900
                             Houston, TX  77002-1635

FOR THE STATE OF TEXAS:      WILLIAM DELMORE, III
                             Montgomery County District
                             Attorney's Office
                             301 North Thompson
                             Conroe, TX  77301


TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
Tel: 281-277-5325 / Fax: 281-277-0946
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

WEDNESDAY, MARCH 19, 2014

PRESIDING JUDGE KELLER: Call now Cause Number WR-73,484-02, *Ex Parte Neal Robbins*.

MR. WICE: I'm Brian Wice from Houston. It is my privilege to represent Neal Robbins.

This is a case about bad science and broken promises. The bad science: The expert trial testimony of Dr. Patricia Moore, as to the manner and cause of death that she later reevaluated and ultimately denounced it was essential to this Defendant's conviction and life sentence.

The broken promises: The right to a fair trial with a reliable result, that the system did not because it could not, keep. The only way a majority of this Court can once again reject the veteran habeas judge's recommendation of a new trial is to adopt the State's myopic interpretation of Article 11.073 that ignores the canons of statutory construction, the dictionary definitions of the terms employed, the unmistakable legislative history and intent behind it and reduces one of the most important changes in habeas jurisprudence to an umbrella which is withdrawn as soon as it begins to rain.

Perhaps the easiest of the four -- of the six questions that this Court has asked us to brief is the Section 4 question. Obviously our burden to show that we come within that exception. Well, I think it's clear

because the State acknowledges on page 13 of its Brief that we do; that the Section 4 exception is disjunctive, not conjunctive. We need to show a legal basis or new factual basis. Clearly we have shown the former, legal basis upon --

JUDGE MEYERS: Showing a legal basis is a change in the law.

MR. WICE: No, sir.

JUDGE MEYERS: Well, that's what Section 4 says.

MR. WICE: That's not what Section 4 says. Second --

JUDGE MEYERS: Well it had to be a change -- a change in the substantive law.

MR. WICE: That's not what Section 4 says, Judge Meyers.

JUDGE MEYERS: But the Section -- but the change in the law has to be a substantive law, not the enabling law.

PRESIDING JUDGE KELLER: But there is a change in this. I mean, it's your position that there is a change in the substantive law, namely that before 11.073 a claim could be actual innocence or a claim could be false evidence, and now there is a new substantive claim, which is evidence --

JUDGE COCHRAN: Change in scientific evidence.

PRESIDING JUDGE KELLER: -- contradict scientific

evidence or was not available -- yeah, contradicts scientific evidence relied on by the State or was not available to be offered a convicted person at trial.

Is that your position?

MR. WICE: It is, Your Honor, and it is fact --

JUDGE MEYERS: That's enabling law.

MR. WICE: To quote from page 13 of the State's Brief:

"Article 11.073 provides a new legal basis for habeas corpus relief in cases in which new scientific evidence would not support an actual innocence or false testimony claim."

At the end of the day, if five judges of this Honorable Court didn't believe that we have met the Section 4 exception, I suspect I wouldn't be here this morning. This case would have been dismissed in November.

In turning to the merits, this Court's point of embarkation in interpreting Article 11.073 are the canons of statutory construction, which are conspicuously absent from the State's Brief. What do they say? That this Court must take the statute as it finds it. That even if it disagrees with it, even if it hates it, even if it thinks that the Legislature didn't know "sic 'em from come here" about habeas jurisprudence, they have got to interpret this statute in a way that gives effect to the legislative intent

in history and it's clear --

PRESIDING JUDGE KELLER: And stop in there for a minute.

Most of the testimony appears to have been about: This bill is to address junk science or discredited science.

Is that correct?

MR. WICE: Some of it was, Your Honor.

PRESIDING JUDGE KELLER: This isn't junk science we're talking about, is it? It's a person's testimony and she has changed her mind after more experience and re-reviewing the evidence; is that correct?

MR. WICE: While I would disagree with the Court's characterization of her merely changing her mind, this is not a situation of Dr. Patricia Moore being a CSI forensic dilettante, who changes her mind the way she changes hairstyles. It's worthy to note that in all of her time, in all of her tenure as an Assistant ME, this was the only case where she had ever reevaluated her expert opinion on her own. Her superiors in other case have ultimately amended or supplemented her conclusions. This is the only case.

PRESIDING JUDGE KELLER: Okay. I don't want to get too far off track, but when she reevaluated her testimony, there is at least an allegation that she reevaluated because she has more experience, because she looked at more -- she looked at the police, the offense

report. She looked at more of the testimony at trial, and one of the things that came up is that she reevaluated it because she didn't understand that there had been so-called aggressive CPR on the 17-month-old child that could have caused the bruises on her back, but she was cross-examined about that at trial, wasn't she?

MR. WICE: And you're right, Judge. And while we point that out in, I think, in Footnote 19 of our Reply Brief, I went back and I looked at both the original majority opinion and Judge Mayes' findings, but I only think that is one element because this is something more than an expert changing her mind. And I --

PRESIDING JUDGE KELLER: What is it that's more than an expert changing her mind? I mean, not that that might not be sufficient on its own, but what is it that's more than an expert changing her mind?

MR. WICE: Well, I think as the Innocence Project points out almost better than I do in its Amicus Brief, the scientific method requires any expert who wants to reexamine an initial determination to consult other experts, to look at relevant material, and viewed through the prism of their own increased training, experience, expertise and knowledge to then make a scientific determination that their initial conclusion was somehow wanting and this is not a case, again, where an expert from the State changed sides or had

buyer's remorse or any other sound bites you're going to hear about in 15 minutes because the legislative intent and history behind Article 11.073.

And make no mistake, I was there, Mr. Udashen, Mr. Henson, recognized that this statute, which was a byproduct of the Timothy Cole Advisory Panel on Wrongful Convictions, two of whose members are in the audience and one of whom is on the bench today, recognize, this was the ultimate failsafe mechanism in cases where the underlying science had not changed as in *Henderson*.

JUDGE COCHRAN: Well I think that's a good point, Mr. Wice, and so I'm looking at the statute and I've read the legislative history, but what exactly are you relying on for the change or the conversion of Dr. Moore's testimony? What words within the statute are you relying on?

MR. WICE: When the statute, Your Honor, uses the words "scientific knowledge," that means more than merely a change in the underlying science. We believe that a common sense interpretation of that provision means that an expert, after further reevaluation through the prism of the scientific method, exactly as Mr. Moore did in this case, in conjunction with increased training, experience and expertise, could then conclude via the scientific method that the initial determination was not correct. That's all that the statute requires.

JUDGE MEYERS: But you have all this in your '01 [writ].

MR. WICE: We have a --

JUDGE MEYERS: Everything that you talked about was -- because the facts have not changed since your '01. Everything that you have -- that you just talked about was in your '01.

MR. WICE: That's correct.

JUDGE MEYERS: So what has -- so what has changed?

MR. WICE: What has changed, Your Honor, is 11.073 because it changed --

JUDGE MEYERS: All that did was codify -- all that did was codify your facts in '01.

MR. WICE: Well, I would disagree because we believe that unlike Article 11.07, Article 11.071 and Article 11.072, 11.073 is a free standing claim upon which relief in a proper case can be granted.

JUDGE KEASLER: Excuse me, Mr. --

JUDGE MEYERS: There is a --

MR. WICE: Yes, Your Honor.

JUDGE KEASLER: Excuse me, Mr. Wice. I think to boil it down, what you're saying is the term "scientific knowledge" ought to be read more broadly than general scientific knowledge. You're talking about specific scientific knowledge relating to the individual expert. Is

that what you're saying?

MR. WICE: Absolutely, Your Honor.

JUDGE KEASLER: Okay.

JUDGE WOMACK: And the trial court and the convicted court found that the scientific knowledge has changed.

MR. WICE: Judge Mayes made a determination in that regard. Whether or not that is, in fact, amply or fairly supported by the Record, I suppose is another issue, but what Article 11.073 does is that I think that it answers two equally compelling concerns posed by two dissenting opinions. Judge Cochran's in the '01 writ and Judge Hervey's an *Ex Parte Henderson*, where Judge Cochran poses the question: What can we do to essentially assure that science and the law aren't at loggerheads?

And of course, Judge Hervey's dissent in *Henderson* where after concluding that the Court essentially granted relief on the basis it doesn't exist, asks: Is something missing here?

What was missing in both cases, Your Honors, was Article 11.073 and I don't think you get to where the State wants this Court to go unless you ignore the dictionary definitions, which of course as Judge Keller pointed out in *Holcombe*, is one of the first places we ultimately turn to.

JUDGE MEYERS: Well 11.073 is not a statute that

grants relief.

MR. WICE:  It's a statute through which relief can be granted.

JUDGE MEYERS:  Listen, it enabled -- it's like 11.07, 11.071, they enable you to come to this Court and file a Writ claiming that you have a Constitutional violation and that's what you had in your '01.  You came to this Court and said she changed her mind as to the cause of death and that --

MR. WICE:  That she reevaluated.

JUDGE MEYERS: -- Okay, whatever.  Whatever it was and it's the same thing you have here, it's the same thing you had in your '01.  And so whatever she did, then we took those particular facts and measured it against a Constitutional provision of due process and we said that did not violate due process in order -- if he did not get another trial for her to present that particular evidence, that did not violate due process and that is exactly the law that is involved in relation to what grants relief, just like it was in *Crawford*, like it was in *Simmons*, like it was in *Atkins*.  Those are the changes --

JUDGE COCHRAN:  This isn't like the -- is it like the codification of an *Atkins* claim?  That is, this is a new claim that you may bring on a writ of habeas corpus.  We have codified *Atkins*, so we're just still stumbling around

with cases, but is 11.073 like a codified *Atkins* claim, but dealing with science?

MR. WICE: It is, Your Honor.

JUDGE COCHRAN: Okay. Let me pose a hypo to you: Let us suppose we have a new DNA scientist and she's just as sweet as all get out, but unfortunately she forgot to come to class one day and forgot a very important part of the DNA testing procedure. So she does a whole bunch of DNA tests and she thinks she's doing it just right and everybody else thinks she's doing it just right. She has all these results and she testifies in all these trials about the DNA.

Turns out five years down the road she wakes up and realizes, "I forgot this important step. None of my tests are any good."

Would this statute cover her change in position? She was never -- she didn't falsify evidence, she didn't testify falsely, she just didn't have it altogether in her knowledge. Would this statute cover her newfound understanding of what DNA really is all about?

MR. WICE: It absolutely would, Your Honor, because the language in 11.073, again, as Judge Keasler pointed out, uses that expression which you cannot look at myopically of scientific knowledge. 11.073 is different from 11.07 and 11.071. You can look at 11.07 and 11.071 and you won't find any reference to ineffective assistance or

*Brady*, or suppression of evidence that alone presents a freestanding claim.

But the drafters of this legislation -- and make no mistake, these folks had every opportunity, as every prosecutor in this Great State did, to come to the Legislature a year ago last week, and tell Senator Whitmire's Committee before the law passed what they're telling this Court after it passed, "Wait a second."

PRESIDING JUDGE KELLER: Maybe they didn't think it applied to anything except junk science.

MR. WICE: No, ma'am.

PRESIDING JUDGE KELLER: That's what it looks like it applies to.

MR. WICE: No, ma'am. I think what this Bill applies to is exactly what the legislative history and intent spoke to. Make no mistake, it's the elephant in the room and let's just come out and say it: As much as the Michael Morton Act recodified discovery on some level to some people, this is the Neal Robbins' Bill. It was in response to this Court's '01 writ decision.

PRESIDING JUDGE KELLER: Well then, why is there so much discussion about junk science and discredited science? They find kind of broad discredited science that has come up in other cases.

MR. WICE: Because, Your Honor, those were the two

previous sessions, the sessions I believe in '09 and '11, which the State points out couldn't have impacted what the Legislature ultimately did because it talked about bullets and dog sniff cases and alligators in the sewers and God knows what else. It was only after this Court's '01 decision in June of 2011 that the game changer became Article 11.073 and it's a different prism through which this Court has to look at the facts.

PRESIDING JUDGE KELLER: And the difference -- go ahead.

JUDGE ALCALA: I have a question about the statutory language. You keep paraphrasing what you think the statute says. When I read the statute under 11.073(b)(1)(A):

"Relevant scientific evidence is currently available."

That's fine, if you need that. And:

"Was not available at the time of the convicted person's trial because the evidence was not ascertainable through the exercise of reasonable diligence by the convicted person before the date of the convicted person's trial."

Now can't we read that to say that the evidence -- you could have ascertained evidence contrary to Dr. Moore at the time of the trial because there were certainly other medical examiners that could have been called.

MR. WICE: And --

JUDGE ALCALA: So it's not junk -- this would be different -- your situation is different from junk science or new science because you couldn't present the evidence at the time of the trial.

MR. WICE: I disagree, Your Honor.

JUDGE ALCALA: And didn't you?

MR. WICE: I disagree because what the State claims is that the evidence was available in the form of Dr. Bux's expert testimony. We could not have known eight years after the fact that Dr. Moore would have reevaluated her testimony, so when they stand up in a second and tell you that Dr. Bux's testimony was available, the statute by its own terms says:

"Evidence relied upon by the State."

That was Dr. Moore's testimony and not Dr. Bux's testimony.

PRESIDING JUDGE KELLER: Was that part added after your testimony that contradicted -- wasn't that an amendment to the Bill? That contradict scientific evidence relied on by the State at trial, had it been discredited before?

MR. WICE: I believe it did, Your Honor, and I think that was a last minute change before we ultimately testified --

PRESIDING JUDGE KELLER: Okay.

MR. WICE: -- with the advice and consent of the Harris County District Attorney's Office.

JUDGE MEYERS: But maybe I missed -- the Judge kind of hit the nail on the head. He said that what 11.073 was codify kind of what your situation is. It would be similar to codifying situations concerning retardation in an *Atkins* situation. But you don't have an *Atkins* case. You have to put -- you have to put case law with facts, if you don't have an *Atkins* case.

MR. WICE: Your Honor, if you believe that I don't prevail on the section --

JUDGE MEYERS: No --

MR. WICE: -- for exception because I point to a new case, whether it's *Atkins* or *Crawford* --

JUDGE MEYERS: That's how we --

MR. WICE: -- or *Dread Scott versus Sanford*.

JUDGE MEYERS: That's how we've always done subsequent writs.

MR. WICE: And I obviously don't have your vote.

JUDGE MEYERS: Well we have to -- that's how we've always done subsequent writs. When the law is changed like in *Crawford* or in *Atkins* or in *Simmons*, or some of those cases, there has been a new case law, how you interpret the application of the facts to the Constitutional violation. We don't have that here. All we have is the codification of

facts that are cognizable, but we don't have a new ruling by either us or the Supreme Court in relation to how this is a due process violation.

MR. WICE: With all due respect, I respectfully disagree.

Hippocrates said, "That to know is science; merely to believe one knows is ignorance."

When she testified in 1999, Dr. Patricia Moore believed she knew. Eight years later, she merely thought she believed. To convict this Applicant on what is nothing more than ignorance, is anathema to due process, and there's been some talk about what the public demands and what the public expects in the last case. What they expect is a --

PRESIDING JUDGE KELLER: Well, let me ask you a question because you just led into it and I was going to save it for rebuttal, but you say that the evidence of the prior injuries that the child received while he was in the Applicant's care is not relevant to whether he should get relief or not. Doesn't that go into the preponderance of the evidence test?

MR. WICE: What I think we need to recognize, Judge Keller, is that evidence was admissible for a limited purpose.

PRESIDING JUDGE KELLER: But it's a broad limited purpose. It was for the -- to show the relationship of the

parties.

MR. WICE: The relationship of the parties.

PRESIDING JUDGE KELLER: And it wasn't a limited, limited purpose, right?

MR. WICE: Well it was a limited purpose. And I think that --

PRESIDING JUDGE KELLER: To show the relationship of the parties is one of the purposes of this amendment.

MR. WICE: That's correct, but I think even if on some level it becomes admissible beyond that limited purpose, what the State has continued to ignore is its wholesale reliance on Dr. Moore's testimony in final argument to not only urge the jurors to convict, but to denigrate Dr. Bux's testimony for the reasons in our Brief and in the Amicus Briefs of the Innocence Project, the National Association of Criminal Defense Lawyers, Texas Criminal Defense Lawyers Association, and for the reasons in our Motion for Reconsideration on the Court's own motion, which is still pending, we ask this Court to grant relief.

PRESIDING JUDGE KELLER: Thank you, Counsel.

MR. DELMORE: If it please the Court, my name is Bill Delmore and I represent the State of Texas in this habeas proceeding.

Judge Meyers, you've got me worried now because I did make a concession that this statute creates a new legal

basis for an Article 11.07 claim.

JUDGE MEYERS: We have to have a new --

MR. DELMORE: If I can briefly explain --

JUDGE MEYERS: We have to have a new judicial case law basis.

MR. DELMORE: At the risk of arguing the Applicant's case, which I certainly don't want to do, it seems to me that the Legislature has now created a right to relief in the absence of a Constitutional violation. So they didn't codify your previous decisions regarding the due process clause. They said -- they actually reduced the burden of proof that you have set for a due process violation.

So in the past that you had new scientific evidence that you claim established your innocence, it was a very difficult test. You had to prove it to the point that no rational juror could convict, when you weigh the new evidence against the evidence adduced at trial, and they've lessened that burden.

PRESIDING JUDGE KELLER: But the decree added statutory means getting relief, not that it doesn't have anything to do with due process.

MR. DELMORE: Exactly. They've created a statutory right to relief based on the use of scientific evidence that is later discredited.

JUDGE MEYERS: And you can't do that under habeas.

MR. DELMORE: I toyed with the argument that the Legislature lacked the Constitutional authority to create a new right to habeas relief and that that was strictly a judicial function under separation of powers, but I couldn't find anything that supports that and I suspect the Legislature probably can create a new right to relief in the absence of a Constitutional violation.

I mean, they could pass a law that says that -- you know, Bill Delmore was --

JUDGE MEYERS: So that --

MR. DELMORE: -- the prosecutor --

JUDGE MEYERS: So that would be the only way that he can get relief now is absent a showing of Constitutional violation.

MR. DELMORE: That's correct.

JUDGE MEYERS: Okay.

MR. DELMORE: Absolutely.

JUDGE MEYERS: And that would be a first on this -- in this particular court, or --

MR. DELMORE: Are there other statutory rights to relief that the Court has not recognized strictly to the exercise of the common law? I can't think of one. There might well be one.

JUDGE KEASLER: When you tell us about a

Constitutional violation, we'll have to say that the actions of the Legislature were unconstitutional in order to deny relief, it would seem.

MR. DELMORE: Well, I think there's plenty of other reasons to deny relief.

JUDGE KEASLER: Yes. I mean, that's --

MR. DELMORE: But to say that the statute doesn't create a legal right -- a new legal basis for a claim --

JUDGE KEASLER: Correct.

MR. DELMORE: -- I think would require a finding that the Legislature exceeded its --

JUDGE KEASLER: Separation of powers and duties.

MR. DELMORE: Yes, sir. Yes, Your Honor.

JUDGE MEYERS: But that's a separate argument, as opposed to whether there is a right of relief under the Constitution, which has always been traditionally and forever the way that you get relief under habeas. That you take the facts --

MR. DELMORE: Judge, that is correct.

JUDGE COCHRAN: Well not necessarily, no. Mr. Delmore, we have Article 17.151, which says if you haven't been -- if the State isn't ready for trial in 90 days, the Defendant gets a right to get out on personal recognizance or bail, when the People bring a pretrial writ to enforce that statute, it's not a Constitutional issue,

but you have a right to bring a writ to enforce the statute. Are you done?

MR. DELMORE: Yes, Your Honor.

JUDGE COCHRAN: Okay. So this is sort of the same kind of concept, different kind of claim, but there's a statutory claim and you could bring a writ to enforce that claim.

MR. DELMORE: Yes, Your Honor. I wish that I had found some authority for the proposition that the Legislature cannot create a new right to habeas relief, but I couldn't find it. If you surprised me by announcing that the Legislature has exceeded its authority, then that makes this case very easy and we're done.

If you can't get there or if you don't get there, then I think we have to go --

JUDGE MEYERS: Easiest way to say it is they just haven't created a wide -- they created an enabling statute, just like 11.07, 11.071, 11.072 enables you to go to file a writ, to present your facts, to say, hey, I've had a Constitutional violation.

And that's exactly what the Applicant in this case had in his '01 writ and it was very cognizable because she had changed her mind as to why or how -- what conclusion she would have come to as to the cause of death.

And then we looked at that and measured it against

the Constitutional provision of due process and said, "It does not violate due process not to give the Applicant a new trial to present this particular situation."

So all 11.073 did was come back and codify those exact same facts and say, "That's -- that is -- that enables you to bring that particular cause." But it's already been brought.

MR. DELMORE: And they went one further step. They also said that a Court "may grant habeas corpus relief if the following showing is made."

JUDGE MEYERS: But you still have to measure it against the Constitution.

MR. DELMORE: Apparently you don't under the statute. It does not require a Constitutional violation. It just requires their --

JUDGE COCHRAN: Would you address the merits, too?

MR. DELMORE: Yes, Your Honor.

JUDGE COCHRAN: Discuss the merits?

MR. DELMORE: The -- I believe that the focus of the statute was to provide a remedy when there's been a scientific advancement or breakthrough that calls into question the accuracy of forensic testimony or evidence that contributed to an inmate's conviction.

PRESIDING JUDGE KELLER: I'm going to stop you for a moment. On the merits, so this Bill had been brought up

in two previous sessions and it appears to be talking about junk science or debunk science. But there is a difference. And in the Bill that was passed, there is the phrase that "contradicts scientific evidence relied on by the State at trial."

I was under the impression -- and maybe I'm wrong -- that that was -- that revision was made after Mr. Wice's testimony. I think he just said that it was made right before his testimony.

What do you think that applies to?

MR. DELMORE: Well, okay. The concern that the prosecutors brought to the authors of this Bill was the vagueness of the term "discredits" because you could discredit testimony by doing something other than showing that new scientific developments has contradicted it.

PRESIDING JUDGE KELLER: Sure.

MR. DELMORE: I'm not -- you know, you could discredit it by saying the scientist who was responsible for the initial science that was testified to at trial was a bad scientist.

PRESIDING JUDGE KELLER: Sure.

MR. DELMORE: "He had cheated on his wife and he didn't pay his income taxes," that would discredit, you know, --

PRESIDING JUDGE KELLER: You can discredit with

another witness.

MR. DELMORE: -- it's a very vague word.

PRESIDING JUDGE KELLER: Okay.

MR. DELMORE: And so the prosecutors didn't like that and they -- it was a prosecutorial suggestion that we replace it with the word "contradicts," and I believe that statement was -- that that change was made simultaneously with that 2013 Committee hearing, because there's a discussion during that hearing of "Well, we have made this change and we're now substituting this Committee language."

PRESIDING JUDGE KELLER: Okay. At that point --

MR. DELMORE: So -- I'm sorry.

PRESIDING JUDGE KELLER: -- were you considering the phrase "scientific evidence" in that part of the statute was broad enough to include testimony within the evidence?

MR. DELMORE: No. I mean --

PRESIDING JUDGE KELLER: But that's what evidence is, isn't it? I mean, it can be testimony or reports or anything?

MR. DELMORE: I was hoping I could convince you that the statute was unambiguous because relevant scientific evidence applies to the substance of the science.

JUDGE COCHRAN: What about -- what about my DNA analyst? She has done 50 cases and she left out a really important step of it and all of her results are wrong, does

Section -- let's see:

"Section A(2) contracts scientific evidence relied on by the State at trial."

Would Section 2 apply to her testimony in those 50 cases?

MR. DELMORE: Do you mean maybe two or three of the elements that this new statute creates, but not before it?

JUDGE COCHRAN: So you're saying all those people --

MR. DELMORE: The one you don't meet then is that it has to be evidence that was unavailable at the time of trial.

JUDGE JOHNSON: But they didn't know about it at time of trial. And she didn't either.

MR. DELMORE: But was it was held --

JUDGE JOHNSON: She thought she was doing it right.

MR. DELMORE: -- some other pathologist could have said, "This is not the way you're supposed to do it, this is not" --

JUDGE JOHNSON: Well --

MR. DELMORE: -- this is not consistent with existing science.

JUDGE JOHNSON: They did, didn't they? And how

are they to know that until she says, "Oops, I did it wrong."

PRESIDING JUDGE KELLER: There was testimony.

JUDGE JOHNSON: But that doesn't --

MR. DELMORE: Expert testimony can be had on both sides.

PRESIDING JUDGE KELLER: Yes.

MR. DELMORE: We now have under *Ake* a right to obtain scientific assistance to the defense.

JUDGE JOHNSON: I understand it, but I think Judge Keller has just posed a question that Dr. Moore testified as to what she thought -- wasn't that the defense also had -- who said what Dr. Moore is now saying.

Isn't that correct?

MR. DELMORE: Absolutely. And that is our primary argument as to why this statute doesn't apply to this situation in that to obtain relief under the statute, the new scientific evidence has to have been unavailable and I believe "new scientific evidence" refers to the substance of the science, the scientific principles and methods that are applied to the case and those --

JUDGE JOHNSON: Well where is it stating new --

MR. DELMORE: -- I'm sorry.

JUDGE JOHNSON: Where in that statute does it say "new?"

MR. DELMORE: I'm sorry?

JUDGE JOHNSON: Where does it say "new" in the statute?

MR. DELMORE: Because it was not available at the time of trial.

JUDGE JOHNSON: Well that doesn't mean it's not -- it's new. It means only that they couldn't find out about it with reasonable diligence. They couldn't -- all technology, it is, you know, difficult that the DNA test was being done wrong.

MR. DELMORE: And I started by saying I was hoping to convince you that the statute is unambiguous my way, but maybe you're pointing out that there are some words in the statute that are ambiguous. The word -- the phrase "relevant scientific evidence" could be ambiguous as to whether you're talking about the science or you're talking about the testimony of an individual witness.

The word "available" could be ambiguous as to whether it means the science hadn't been discovered yet, hadn't been developed yet, or it could mean that the witness is on vacation.

JUDGE JOHNSON: Well --

MR. DELMORE: So then we would go to the extra textual considerations in determining the legislative intent, such as the legislative history and the consequences

of a particular construction.

JUDGE JOHNSON: It seems to me that science does not become either relevant or evidence until somebody gets up on the witness stand and talks about it and if they -- their testimony about the science is both relevant and scientific, then if that is mistaken at the time -- such as this DNA person -- then that, it seems to me, is what we're looking at, not the science itself, but the science as presented by a witness and that witness testified for whatever reason such that it misled whoever listened to it, and I think juries really do -- can rule as to weight, to State's witnesses -- scientific areas where most jurors won't really know whether they're talking correctly or not.

So I'm still looking for the word "new" because it doesn't say that in the statute. It says it's evidence that has to be science that's relevant to the case and now it apparently contradicts the evidence that was presented at trial and because she did not reevaluate it until she had learned more, that it was not available at the time.

MR. DELMORE: And Your Honor, respectfully, you omitted one element of the new test, which is "not available at the time of trial."

JUDGE JOHNSON: And her testimony was --

MR. DELMORE: That --

JUDGE JOHNSON: -- not available at the time.

JUDGE HERVEY: But there was contradictory --

MR. DELMORE: But it was available from --

JUDGE HERVEY: -- testimony presented by the defense to contradict what she said at trial.

MR. DELMORE: Yeah, it --

JUDGE HERVEY: So that was available at trial.

MR. DELMORE: I think that if it's available through the testimony of another witness that this Court should find that it was available.

PRESIDING JUDGE KELLER: Well also, I mean, even if scientific evidence covers her testimony -- includes her testimony under (d), the Court -- (d) says:

"The Court shall consider whether scientific knowledge or method in which the relevant scientific evidence in the case has change."

Now opposing counsel tends to put in her own -- when he's talking about that part of the statute -- her own scientific knowledge or method has changed.

So we're supposed to consider whether -- even if scientific evidence includes her testimony, whether scientific knowledge or method has changed, and that's kind of the crux of the issue here, isn't it?

MR. DELMORE: Yes and no, Your Honor. I mean, (c) and (d) -- where you're looking at that language -- seemed to me to set out the standard for when there is a new

factual basis for a subsequent under 11.073.

PRESIDING JUDGE KELLER: Well that could be, but --

MR. DELMORE: And it's saying that there has to have been a change in the science since you last filed a writ.

PRESIDING JUDGE KELLER: That could be, but the language is the same -- some of the language in (d) is the same as the language in (a) -- no, in (b)(1)(A), where it says --

MR. DELMORE: And it's also the same as the language in Section 4 of 11.07 and Section 5 of 11.071, when you're talking about "reasonably ascertainable."

JUDGE COCHRAN: Right, but reasonably ascertainable, for example, goes to *Brady* material and certainly existed at the time of the trial, but poor Defendant just didn't know about it. Do you suppose they use that same language here to cover exactly the same situation? That is, it's there, but it's just that the Defendant didn't know about this particular evidence?"

Because otherwise, they could have said, "Because of scientific -- because the scientific evidence is new" and you wouldn't have to mess with it, it was not ascertainable through the exercise of reasonable diligence by the convicted person before the jury during the convicted

person's trial. I mean, it's two words instead of fifteen.

MR. DELMORE: My argument, Your Honor, is that the two words were synonymous with the fifteen, that the point of the statute was to provide a vehicle, a mechanism for a habeas applicant when there has been a change in science.

JUDGE COCHRAN: Do you think that Senator Whitmire would agree with that? I mean, it's my understanding that the legislative history is just replete with the *Neal Robbins* act.

MR. DELMORE: And I totally disagree with that, Your Honor.

JUDGE COCHRAN: Okay.

MR. DELMORE: Because this legislation was created in 2009 and the Committee Report that came out of the Committee in 2009, which is set out in its entirety in one of the footnotes in my brief, is virtually identical with this statute.

And so in 2009 this Bill was about junk science and correcting the junk science when there's been advancements in science and a clarification of the science and it was all about primarily the arson cases in which it was clear from the new scientific studies that the old science was bad.

JUDGE JOHNSON: Mr. Delmore? And then?

MR. DELMORE: And --

JUDGE JOHNSON:  What would your argument be if we substitute for Patricia Moore, Dr. Fred Zain --

MR. DELMORE:  I'm sorry.  Say that again?

JUDGE JOHNSON:  If you substitute for the name "Dr. Patricia Moore," the name "Dr. Fred Zain," then what is your argument about why a person in that position should not be given another trial?

MR. DELMORE:  Okay.  I'm guessing that's from the *Henderson* case?

JUDGE JOHNSON:  No.  Dr. Fred Zain was rather infamous for dry-labbing.

MR. DELMORE:  Okay.  I'm not familiar with that, but --

JUDGE JOHNSON:  In two states --

MR. DELMORE:  -- I don't think the statute was intended to correct the errors in the specific testimony of the individual experts.

PRESIDING JUDGE KELLER:  Well, false testimony, they already --

MR. DELMORE:  Because that --

PRESIDING JUDGE KELLER:  -- they already have jurisprudence on false testimony.

MR. DELMORE:  Exactly.  You could already do that under the Court's existing jurisprudence if there was a false statement made by an expert that was material to the

outcome, it was a due process violation before.

JUDGE KEASLER: When we break it all down, all we need to do is look at the legislative history to decide -- you know, if --

JUDGE COCHRAN: Well, first we have to decide on --

MR. DELMORE: In 2009 and 2011 --

JUDGE COCHRAN: Again, I can save that question later.

MR. DELMORE: -- it was all about arson. It was about the FBI's discredited bullet, lead analysis. In 2011 there was discussion of the canine scent lineups.

PRESIDING JUDGE KELLER: So what did -- where did *Neal Robbins* get mentioned in this legislative history?

MR. DELMORE: It came -- it was finally mentioned when Neal Robbins' supporters appeared at the last moment in 2013, and it's our position that that is too little and too late.

JUDGE MEYERS: Well let me ask you this: This case boils down to whether 11.073 is a statutory situation concerning -- it allows relief independently of the competition. Isn't that basically what it boils down to?

MR. DELMORE: I think I could finish your sentence about five different ways, Judge. This case could boil down to whether the statutory language is ambiguous.

JUDGE MEYERS: Well --

MR. DELMORE: It could boil down to whether the evidence --

JUDGE MEYERS: -- that would be interpreting all the statutes, you know, as to whether or not the facts fit within the statute.

MR. DELMORE: Yes.

JUDGE MEYERS: But I'm saying that's the only vehicle that the -- that's the only way that the Applicant here could win is if the statute provide separate -- relief separate of a Constitutional violation.

MR. DELMORE: Yes. And I believe that your testimony -- I'm sorry, your opinion will eventually boil down to holding that the relevant scientific evidence upon which they are now relying was available at the time of trial because it was fully known science at the time and it was offered --

JUDGE MEYERS: But that would mean --

MR. DELMORE: -- during the trial --

JUDGE MEYERS: That only goes with the Section 4 situation if we are going to measure it on a Constitutional basis, but apparently it seems like the Legislature has created some kind of -- it has overstepped its bounds, it seems like, and creates some kind of statutory relief statute.

MR. DELMORE:  And I would love to be wrong in that regard.

JUDGE COCHRAN:  May I have one last question?

PRESIDING JUDGE KELLER:  Well please, come in. Sure.

JUDGE COCHRAN:  What we're talking -- and you rely quite heavily on Dr. Bux's testimony as it was available testimony concerning how this was an undeterminable cause of death, was it favorable to the Defendant through Dr. Bux's testimony, and I guess I'm thinking:  But isn't there a big difference and didn't the State make a big difference between this is the "Johnny-on-the-spot" medical examiner who actually did this work and heaven forbid has a total neutral scientist versus Dr. Bux's, the hired gun from, you know, San Antonio, who didn't touch this stuff.  He was just looking at the record.

Do we think there is sort of a qualitative difference that was emphasized by the State during closing argument, between those two?

MR. DELMORE:  Well first, I don't believe the statute is about preexisting science.  And Dr. Bux was relying on preexisting science, so I don't think you even meet the standard.

But if I'm wrong about whether we're -- the statute refers to the substance of the testimony or the

specific expert opinion testimony of a particular witness, if you get all the way there, then I think that the next question is: How do you weigh the new evidence, whatever that is from whatever source against the evidence that was actually offered at trial?

JUDGE COCHRAN: Is --

MR. DELMORE: Which is the standard. It's right there in the statute.

JUDGE JOHNSON: Mr. Delmore, you said that Dr. Bux was relying on established scientific --

MR. DELMORE: Yes, Your Honor.

JUDGE JOHNSON: What was Dr. Moore relying on?

MR. DELMORE: She was trying to rely on pre-existing science, yes.

JUDGE JOHNSON: And so they're doing the same thing?

MR. DELMORE: Yes, Your Honor.

JUDGE JOHNSON: Okay.

MR. DELMORE: This -- there was no -- there is no new science in -- by my count, six members of this Court have already said that the *Ex Parte Robbins* case is not about any new scientific development or breakthrough.

JUDGE JOHNSON: When did we say that?

MR. DELMORE: Hum?

JUDGE JOHNSON: Where did it say that?

MR. DELMORE: In the *Ex Parte Robbins* decision, three of the Opinions very specifically state that, Your Honor, that it's not -- there was no scientific breakthrough. We're --

JUDGE JOHNSON: Well see, that's where the statute gets ambiguous because it doesn't say anywhere "new science." It just says "not available," which is entirely different than "new."

MR. DELMORE: And I respectfully disagree and I think that's one of the big decisions that the Court is going to have to make in construing the statutory --

JUDGE MEYERS: The statute says what it says and the facts are what they are, whether there is new science in *Robbins* or not, and the statute whether it says "new science" or not, so those are what they are.

Now whether they commingle or not, that's a different thing.

MR. DELMORE: I'm not sure if that was a question, Judge.

PRESIDING JUDGE KELLER: Mr. Delmore, your time is up.

JUDGE MEYERS: The question was: Is that a great statement?

MR. DELMORE: Yes, Your Honor.

JUDGE MEYERS: Thank you.

MR. DELMORE: Thank you very much.

JUDGE MEYERS: Thank you for the statement.

MR. WICE: May it please the Court? Senator Whitmire's Committee's focus in '09 was on arson and '11 on dog sniffs, but make no mistakes, Your Honors, in 2013 a year ago last week it was all about *Neal Robbins*.

Judge Keasler, you make two great points. If this is a case about legislative overstepping, then I lose, but strangely the State has never urged that in its response before this Court. Moreover, Judge Keasler, this does come down -- this is all about legislative history and intent and they've ignored it because I can assure you that if John Whitmire sat at that table, he'd be raising holy heck about the way they interpret the statute.

PRESIDING JUDGE KELLER: Well we don't get to look at that. Legislators can't come back after a statute is enacted and tell us what they meant by it. We held that.

MR. WICE: Absolutely.

PRESIDING JUDGE KELLER: Okay.

MR. WICE: But what I'm suggesting is having been there, I can assure you that the Committee's focus was not on scientific breakthrough and again, if a majority of this court believes that this case turns on a scientific breakthrough, then I'll lose.

PRESIDING JUDGE KELLER: Well let me say --

MR. WICE: And that's not -- but that's not what the legislative intent history spoke to, Judge Keller.

PRESIDING JUDGE KELLER: Okay. Let me ask you -- I have about three questions.

You make a point several times of saying in your Brief that we're supposed to interpret the statute the way it's written, regardless of whether it's a good idea, bad idea, or what we think about it. Is that a reference to -- let me ask: What would prevent -- I mean, if Dr. Moore changed her -- came up with a different opinion in this case, changed, whatever, but would this statute be available for relief if the defense just brought in a different witness, not Dr. Moore, but someone else who contradicted scientific evidence relied on by the State?

MR. WICE: No. Because I would suspect in that scenario, the evidence was otherwise available. I think as Judge Johnson points out: How could we have known eight years after she walked out of the courtroom that ultimately she would reevaluate her trial testimony? It existed, much like the *Brady* evidence the State hides. We just didn't know that she would ultimately reevaluate her testimony and again, the statute speaks to evidence relied upon the State. That's not Dr. Bux. That's ultimately Dr. Moore.

JUDGE COCHRAN: Yes.

JUDGE ALCALA: Mr. Wice, under (b) it says that if

the Court finds that had the scientific evidence been presented at trial, under the preponderance of the evidence, the person would not have been convicted.

The "had the scientific evidence been presented at trial," is that specifically in your opinion Dr. Moore's testimony? Had Dr. Moore's revised testimony been presented at trial, the person would not have been convicted?

It's in followup to Judge Keller's question: Does the statute come into play just because of the revised testimony of Dr. Moore, or because some new expert has come along and now discredited this whole science?

MR. WICE: No. No, Your Honor.

JUDGE ALCALA: And some others?

MR. WICE: No, Your Honor, I think our take on it is simple, that if a jury had heard Dr. Moore's reevaluation, they would not have convicted by a preponderance of the evidence.

PRESIDING JUDGE KELLER: Okay. That gets me to my next question, which has not been fully addressed yet: The standard for prejudice hasn't changed, has it? I mean, have new way to get relief, but the standard of prejudice hasn't changed to preponderance of the evidence, which it was when you filed your initial Brief?

MR. WICE: That's correct.

PRESIDING JUDGE KELLER: It has changed. Has

anything changed since then? Because we didn't address prejudice. Judge Price did in his concurring Opinion.

MR. WICE: Well I think the dissenters did, as well. I think we've got four members of this Court that found that even under the original '01 writ that the Applicant had proved by a preponderance of the evidence that he was entitled to relief based upon --

PRESIDING JUDGE KELLER: Isn't that something this Court has to address, even if we go with you on every other argument you've made?

MR. WICE: Absolutely, Judge. I mean, it's certainly part and parcel of our burden, but Judge Johnson makes a great point. In the 21st Century, with the CSI effect, and jurors blinded by science, forensic experts are the new High Priests of the courtroom.

This is not a situation where we can compare it to any other witness who walks into Court and ultimately takes the oath. This is about legislative history and if this Court wants to look past it and find that we are required to show a scientific breakthrough when the legislative intent history says, "Uh-huh. No, not -- that dog don't hunt."

JUDGE MEYERS: Breakthrough -- breakthrough is whether there has been a statutory relief granted in this stage. That's the breakthrough. That would be the -- that's what this case boils down to is whether 11.073 grants

relief based upon the statute.

MR. WICE: I agree.

JUDGE MEYERS: Okay.

MR. WICE: I absolutely agree with that.

JUDGE MEYERS: That might be the first time we've ever done it.

MR. WICE: No question about that, Your Honor, and in the last 15 seconds that I have, I want to quote one of my heroes, Robert Jackson. He said that:

"If there is any fixed star in our Constitutional constellation, it is that the public" --

We've heard a lot of talk what the public wants -- but what the public demands is the notion that verdicts in criminal cases are supported by -- and based solely on reliable scientific evidence, that withstands the test of time.

The evidence in this case cannot, it did not, ultimately survive that test and for that reason, for the reasons in our brief and for the legislative intent and history, which we submit could not be clearer, the Legislature may not have thought that this Court got it wrong back in '11, but I think they thought you were a little weak on being right.

I ask this Court with all of the vigor at my disposal to grant relief.

PRESIDING JUDGE KELLER: Thank you, Counsel.

THE CLERK: All rise.

Oyez, oyez, oyez! The Honorable Court of Criminal Appeals now stands recessed, subject to the call of the Presiding Judge.

*     *     *     *     *

*I certify that the foregoing is a correct transcript to the best of my ability from the electronic sound recording of the proceedings in the above-entitled matter.*

*/S/ MARY D. HENRY*

*CERTIFIED BY THE AMERICAN ASSOCIATION OF*

*ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*D-337*

*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

*JTT INVOICE #52294*

*DATE: APRIL 20, 2014*